UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY PAULEY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-412-PPS-JEM |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Jeremy Pauley, a prisoner without a lawyer, filed a complaint under 42 U.S.C § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Pauley is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Pauley is an inmate at Indiana State Prison. He describes a tragic set of events occurring on January 14, 2023, when an inmate died in a fire that broke out in

cell A252 in A cellhouse.[1] Mr. Pauley was housed on the floor above the cell that caught fire. He claims he heard screaming and his cell filled with smoke; he had a panic attack and then lost consciousness. Sometime later, which he estimates at 30 minutes, his cell door opened. He and the other inmates began to run outside. He noticed the floors were wet, there were hoses everywhere, and the building fans were "being used for exhaust." On his way out he saw Officer Kevin Cross, Lieutenant Nadine Smith, Officer Darnell Crockett, Sergeant Jeniene Walton, Lieutenant Dennis Koen, and Jacqueline Mayes, who were directing the inmates to an outdoor recreation area.[2] He told them he was in need of medical attention and they allegedly told him they would "get to that later" and to "just go to rec." Mr. Pauley and the other inmates remained in the recreation yard while the officers evacuated and conducted a count of inmates. Several hours later, they were told to return to their cells.

After they returned to their cells, Dr. Christina Chico, a mental health provider at the prison, walked through the unit. Mr. Pauley allegedly told Dr. Chico that he needed to see medical staff for breathing difficulties. She responded, "They're notified and suppose[d] to be coming." (ECF 1 at 3.) As she was talking to him, she "wrote something down on paper" which he "assumed was [his] name or room number." *Id.* She then left and he did not see her again. He later filed grievances requesting medical

---

[1] Mr. Pauley's case is one of approximately 20 cases filed by inmates living in A cellhouse at the time of the fire. I note that he did not provide the full names of some of the defendants, but I will take judicial notice of the appearance filed by these defendants in one of the earlier-filed cases listing the correct spelling of both their first and last names. *See Wilburn v. Neal, et al.*, 3:24-CV-26-PPS-JEM (N.D. Ind. filed Jan. 9. 2024).

[2] He does not include Ms. Mayes' title or explain her role at the prison.

2

care, which allegedly "went unanswered." He also put in a request for mental health treatment and was seen by Dr. Martin (first name unknown), a mental health provider, approximately two weeks later. As a result of these events Mr. Pauley claims to suffer chest pains, headaches, nightmares, and other symptoms. He seeks $1 million in damages from 11 defendants.

### Response To Fire

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* at 834. The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" that a prison employee's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." *Id.* (citation omitted). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (citation omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Because Mr. Pauley was upstairs when the fire broke out, he provides little detail about what occurred as prison staff responded to the fire. At most he alleges that the officers who responded to the fire were untrained and "unaware of the location of the

3

fire extinguisher," which suggests negligence, not deliberate indifference. I cannot plausibly infer from his minimal allegations that any of the defendants deliberately turned a blind eye to his safety. He believes they should have acted more quickly to evacuate him, but it can be discerned from his allegations that in those frantic moments the officers focused their efforts on putting out the fire rather than evacuating inmates located a floor above. This may not have been the best approach, but "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). He has not plausibly alleged that the officers acted with a mental state akin to criminal recklessness in responding to the fire.

### **Denial of Medical Care**

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

4

I will presume that Mr. Pauley's breathing difficulties amounted to a serious medical need, satisfying the first prong. On the second prong, he asserts that he reported his need for medical attention to Officer Cross, Lieutenant Smith, Officer Crockett, Sergeant Walton, Lieutenant Koen, and Ms. Mayes, but they allegedly brushed off his concerns. It may have been reasonable for them to initially focus on evacuating and taking count of the inmates in the cellhouse, but Mr. Pauley claims that none of these individuals took steps to have him evaluated by medical staff even after the emergency was over. Instead, they simply told him to go back to his cell. He will be permitted to proceed further against these defendants for the denial of medical care under the Eighth Amendment.

As for Dr. Chico, she is a mental health provider and there is no indication from his allegations that she was equipped to treat injuries from smoke inhalation. By his account, Dr. Chico told him medical staff had been notified and would be coming. No one ever came, but Dr. Chico cannot be held personally liable for the "misdeeds" of other prison employees. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). He did not see her again, and there is insufficient factual content from which I could plausibly infer that Dr. Chico knew he did not get the medical care he needed. He has not stated a plausible deliberate indifference claim against Dr. Chico. Likewise, Dr. Martin's only alleged involvement in these events was to see Mr. Pauley once approximately two weeks after the fire in response to his request for mental health treatment. He does not allege that Dr. Martin provided constitutionally inadequate care nor can I plausibly

5

infer that the doctor was otherwise deliberately indifferent to his needs. These two defendants will be dismissed.

### High-Ranking Officials

Finally, he sues high-ranking officials for the circumstances leading to the fire: IDOC Commissioner Christina Reagle, Warden Ron Neal, and Assistant Warden Dawn Buss. Giving his allegations liberal construction, he claims they were aware that the conditions in the A cellhouse posed a significant risk of injury from fire, including that fire extinguishers did not work, there were no fire drills performed, the cellhouse did not have fire alarms, and the exhaust system was inadequate. He further claims these officials had the ability to alter these conditions and yet did nothing to protect him.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832-33 (citation omitted). To establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to "an excessive risk" to his health or safety. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). This requires satisfying two components: "(1) the harm to which the prisoner was exposed must be an objectively serious one; and (2) judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk." *Id.* (cleaned up). On the second prong, the plaintiff must establish that "the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from [their] failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted).

6

There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable for damages simply because they oversee operations at the prison or within the IDOC. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). However, they may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019) (citation omitted). Additionally, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn*, 911 F.3d at 423 (cleaned up). Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (citation omitted).

Giving Mr. Pauley the inferences to which is entitled at this stage, he has plausibly alleged that the above officials ignored the serious danger posed by fire in the A cellhouse because of the conditions and omissions he outlines. As a result, he suffered physical and emotional injuries. He will be permitted to proceed on a claim for damages against these officials under the Eighth Amendment.

For these reasons, the court:

(1) DIRECTS the clerk to update the docket to reflect that the true name of "Lieutenant Cain" is Lieutenant Dennis Koen and the true name of "Officer Crokett" is Officer Darnell Crockett;

(2) GRANTS the plaintiff leave to proceed against Officer Kevin Cross, Lieutenant Nadine Smith, Officer Darnell Crockett, Sergeant Jeniene Walton, Lieutenant Dennis Koen, and Jacqueline Mayes in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment;

(3) GRANTS the plaintiff leave to proceed against Commissioner Christina Reagle, Warden Ron Neal, and Assistant Warden Dawn Buss in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Dr. Chico and Dr. Martin as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Ron Neal, Christina Reagle, Dawn Buss, Jacqueline Mays, Dennis Koen, Kevin Cross, Nadine Smith, Darnell Crockett, and Jeniene Walton at the Indiana Department of Correction and to send them a copy of this order and the operative complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Warden Ron Neal, Commissioner Christina Reagle, Jacqueline Mayes, Lieutenant Dennis Koen, Officer Darnell Crockett, Lieutenant Nadine Smith,

8

Sergeant Jeniene Walton, Officer Kevin Cross, and Assistant Warden Dawn Buss to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: July 22, 2024.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT